IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CRIMINAL ACTION NO. 3:21-CR-00085-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| HERBERT LEONEL DIAZ, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Defendant's Motion to Dismiss (Doc. No. 14) (the "Motion"). For the reasons discussed below, the Court will **DENY** the Motion.

## I. RELEVANT BACKGROUND

On November 15, 2010, Mr. Diaz applied for naturalization (the N-400 form) in which he certified that he had not committed a crime or offense for which he was not arrested. *See* Doc. No. 14-1. On March 2, 2011, he appeared for a naturalization interview and he signed his application in the presence of a U.S. Citizenship and Immigration Services (USCIS) officer. He swore under penalty of perjury that the contents of his application were all true and correct. *Id*. at 11-13. On the same day, the USCIS approved his application for naturalization. *Id*. at 1.

Mr. Diaz was later advised to appear at a March 30, 2011 naturalization ceremony. *See* Doc. No. 14-2. He submitted an N-445 form in connection with the ceremony. *Id*. The N-445 form is a USCIS form used to notify an applicant of the time and place at which their U.S. citizenship oath ceremony is scheduled to happen. The N-445 form did not ask any questions involving conduct before "the date . . . [he was] first interviewed on . .. [his] Application for Naturalization." *Id*. Accordingly, the questions did not "refer to anything that happened before the interview." *Id*.

1

Mr. Diaz participated in the naturalization ceremony and was granted a Certificate of Naturalization.

As alleged in the Indictment, on July 3, 2012, Mr. Diaz was arrested for child sex offenses alleged to have occurred from 2003 to 2006. Doc. No. 1 at ¶ 7. On March 19, 2014, Mr. Diaz pled guilty in Superior Court for Riverside County, California, to five counts of lewd acts with a child, in violation of California Penal Code § 288(B), and was sentenced to a term of 35 years imprisonment. *Id.* at ¶ 8.

Mr. Diaz now moves to dismiss the indictment against him arguing that the ten-year statute of limitations began to run on March 2, 2011, not March 30, 2011 as the government contends, and therefore the March 17, 2021 indictment is untimely.

## II. DISCUSSION

The Supreme Court has held that the "purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970). The "limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 114-115. Additionally, "a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Id.* at 115. The government bears the burden of proving that it indicted the defendant within the appropriate limitations period. *See Smith v. United States,* 568 U.S. 106, 113 (2013).

Neither party disputes that the statute of limitations for a § 1425(a) offense is ten years. *See* 18 U.S.C. § 3291. Mr. Diaz argues his charged crime of unlawfully procuring naturalization was completed on March 2, 2011, when he submitted his N-400 application for the purpose of

2

Case 3:21-cr-00085-KDB-DCK   Document 18   Filed 06/29/22   Page 2 of 5

procuring naturalization and when that application was approved. (Doc. No. 14). Mr. Diaz contends the only illegal act that contributed to obtaining citizenship was his submission of allegedly false and fraudulent information as to material facts about his criminal history in his application for naturalization. (Doc. No. 1 and 14). Therefore, the statute of limitations began to run on March 2, 2011 and accordingly, the statute of limitations expired ten years later on March 2, 2021. However, the Court disagrees. The statute of limitations did not begin to run on March 2, 2011 but instead began on March 30, 2011 when Mr. Diaz *procured* citizenship.

The naturalization ceremony establishes the beginning of the statute of limitations for 18 U.S.C. § 1425(a) prosecutions because, under the fundamental principles of criminal law, "[t]he statute of limitations begins to run when a crime is complete; that is, when each element of the crime charged has occurred." *Toussie,* 397 U.S. at 115. 18 U.S.C. § 1425(a) reads, in pertinent part, that "(a) Whoever knowingly procures or attempts to procure, contrary to law, the naturalization of any person, or documentary or other evidence of naturalization or of citizenship . . . .." violates this criminal provision. The United States establishes an 18 U.S.C. § 1425(a) violation occurred by showing: (1) the defendant did or attempted to procure citizenship or naturalization; (2) knowingly; and (3) contrary to law. Because Mr. Diaz is charged with unlawful procurement of naturalization, all elements of the crime were not satisfied until March 30, 2011, when Mr. Diaz actually obtained his citizenship through naturalization. *See United States v. Swetz*, 2019 WL 545005, *2 (D.Nev. 2019) ("The alleged crime [] of naturalization fraud . . . [was] not complete until [the defendant] received the benefit sought by her fraudulent application [], that is, she was naturalized . . ..").

Although the government fails to cite it as authority, the Court recently addressed this exact issue in *United States v. Vongphakdy,* No. 3:21-CR-00184-KDB-DSC, 2021 U.S. Dist. LEXIS

3

248169 (W.D.N.C. Dec. 30, 2021).[1] In that matter the Court held that "the naturalization ceremony and oath are important aspects of the naturalization process and are the final act by which an alien becomes a citizen of the United States." *Id*. at 7. Consequently, when a defendant is charged with unlawful procurement of naturalization the statute of limitations begins to run on the date citizenship is *actually* procured and not any earlier date. *Id*.

Other courts have addressed this issue and have reached the same conclusion. In *United States v. Szilvagyi*, 417 Fed.Appx. 472 (6th Cir. 2011), the Sixth Circuit also concluded that the statute of limitations began to run on the date the defendant took the oath of citizenship. *Id.* at 476. The *Szilvagyi* court reasoned "the crime was not completed until [the defendant] actually obtained citizenship . . .." and that "an applicant for naturalization obtains United States citizenship only after taking an oath of allegiance before a federal judge." *Id.; see* 8 U.S.C. § 1448(a) ("A person who has applied for naturalization shall, in order to be and before being admitted to citizenship, take in a public ceremony before the court . . . an oath . . .."). Further, in *United States v. Kneginich*, 2017 WL 1959354 (W.D.Mich., May 10, 2017), a district court found that the unlawful procurement of naturalization is not complete until a defendant obtains citizenship by taking an oath of allegiance before a judge. It further noted that the date of the naturalization ceremony is the date on which the statute of limitations begins to run. *Id.* at *1. *See also United States v. Dia,* No. 1:20-cr-103, 2022 U.S. Dist. LEXIS 58732 (S.D. Ohio Mar. 30, 2022).

In sum, as noted above the naturalization ceremony and oath are important aspects of the naturalization process and are the final act by which an alien becomes a citizen of the United States.

---

[1] Defense counsel candidly admits that this Court addressed substantively identical arguments in *United States v. Vongphakdy*, No. 3:21-CR-00184-KDB-DSC, 2021 U.S. Dist. LEXIS 248169 (W.D.N.C. Dec. 30, 2021). Having carefully reviewed the Motion in this matter, the Court is persuaded that its previous analysis is correct.

*See United States v. Vongphakdy,* No. 3:21-CR-00184-KDB-DSC, 2021 U.S. Dist. LEXIS 248169 (W.D.N.C. Dec. 30, 2021) (citing *United States v. Knauer*, 328 U.S. 654, 66 S.Ct. 1304 (1946) (the ceremony "is the final act by which an alien acquires the status of citizen.")). Even though Mr. Diaz may have committed a crime on March 2, 2011, the government indicted him on unlawful procurement of naturalization. (Doc. No. 1). The final act necessary to complete that alleged crime was the actual procurement of citizenship, not the alleged fraudulent statement. This did not take place until he took his oath of allegiance on March 30, 2011. Therefore, because the grand jury returned a true bill of indictment before March 30, 2021, ten years after the statute of limitations began to run, the indictment is timely. Accordingly, the Court will deny Mr. Diaz's motion to dismiss.

**SO ORDERED.**

Signed: June 29, 2022

Kenneth D. Bell
United States District Judge